UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIM AMMONS, | ) |
|     Plaintiff, | ) No. 16 CV 4884 |
| v. | ) Magistrate Judge Young B. Kim |
| CHICAGO BOARD OF EDUCATION, | ) |
|     Defendant. | ) March 20, 2019 |

**MEMORANDUM OPINION and ORDER**

Plaintiff Kim Ammons ("Ammons") brings this action against Defendant Board of Education of the City of Chicago ("the Board") for alleged violations of the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"),[1] arising out of her employment as a Security Officer at Curie Metropolitan High School ("Curie"). Before the court is the Board's motion to strike Ammons's jury demand as to her retaliation claims. For the following reasons, the motion is granted in part and denied in part:

**Background**

The court recited extensive facts pertaining to this lawsuit in its opinion and order ruling on the Board's motion for summary judgment. (R. 77, Mem. Op.) As such, the court provides here only a summary of facts relevant to the Board's current motion. Ammons began working as a security officer at Curie in April 2004.

---

[1] Ammons also brought a claim against the Board pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII") for reprisal discrimination. (R. 1, Compl. ¶¶ 44-51.) However, the court previously ruled that Ammons can proceed only on her ADA retaliation claim, not her Title VII retaliation claim. (R. 77, Mem. Op. at 23-24.)

(Id. at 2.) Her job duties remained consistent between 2004 and 2012, although she worked in different locations within Curie. (Id. at 2-3.) During that time Ammons generally had access to a chair in which she would sit when individuals were not in the hallway or when she was not required to actively patrol her assigned location. (Id.)

Since 2012 the Board has maintained the following job description for security officers: "Security Officers are responsible for the overall safety and security of the school," are "actively involved in the progressive discipline system," and provide "the first line of defense to defuse and de-escalate student misconduct and/or serious incidents." (Id. at 3.) The position's "Principal Accountabilities & General Responsibilities" include: (1) "actively respond[ing] to fights or other issues in the school that threaten the safety of students, staff, and/or guests"; (2) "maintain[ing] an orderly post and remain[ing] at the post at all times unless otherwise directed by a supervisor"; (3) fulfilling "duties assigned related to Hall Sweeps"; (4) reporting "unusual activity or suspicions of safety issues" to the security supervisor or administration; and (5) monitoring school grounds and school entrances. (Id.) The job description does not require constant walking. (Id.)

In April 2012, the administrative body charged with supervising security officers decided that officers no longer would be permitted to sit while on duty. (Id. at 4.) The policy applied to all security officers on a district-wide basis but apparently was not implemented at Curie until the 2015-16 school year. (Id.) In 2014 and the early part of 2015, Ammons was posted to a location in Curie where

the administration permitted a chair.  (Id.)  But then in April 2015, the administration removed the chair.  (Id. at 6-7.)

On April 29, 2015, Ammons submitted a request to the Board's Equal Opportunity Compliance Office ("EOCO") for an accommodation under the ADA so that she may "sit for a short time" to "take some pressure off [her] feet, back, and r[ight] knee."  (Id. at 7.)  Ammons reported that she had plantar fasciitis and was "impaired having to walk for 6 ½ hours per day without a break."  (Id.)  On May 4, 2015, Ammons also filed Charge Number 2015CF2939 with the Illinois Department of Human Rights ("IDHR").  (Id.)  She alleged harassment on account of her disabilities.  (Id.)  EOCO denied Ammons's request for a chair but offered her a work schedule modification allowing her to take a 30-minute lunch break and two 15-minute breaks, rather than a 60-minute lunch break.  (Id. at 7-8.)

Later in 2015 a new administration started at Curie, along with a new chief security officer.  (Id. at 8.)  The new team prohibited all security officers from sitting while on duty.  (Id. at 8-9.)  From the start of school year through early December 2015, Ammons was absent for about 15 school days.  (Id. at 10-11.)  Then from December 3, 2015, through January 3, 2016, and from January 5 to January 10, 2016, Ammons was out on approved short-term disability leave.  (Id. at 11-12.)  From December 1, 2015, through January 3, 2016, and from January 5 to 10, 2016, she was also placed on approved FMLA leave.  (Id.)

On December 11, 2015, Ammons submitted another request for an ADA accommodation, requesting that she be assigned either to the entrance where

3

security "sits and log[s] in [the] public" or to the locker room as an attendant. (Id. at 11.) Ammons explained that she was unable to "walk or stand continuously for 6+ hours" and that she "need[s] to sit 10 mins each hour." (Id.) EOCO denied this request explaining that Chicago Police officers are posted at the entrance and that the locker room post "is not a sitting position." (Id. at 12.) EOCO again advised Ammons that she could take a 30-minute lunch break with two 15-minute breaks as an alternative accommodation. (Id.) Ammons later appealed, and the Board denied the appeal. (Id. at 14.) On December 30, 2015, Plaintiff filed Charge Number 440-2016-00903 with the IDHR, asserting three claims: (1) denial of a reasonable accommodation; (2) ADA discrimination and retaliation; and (3) Title VII retaliation. (Id. at 11.)

Ammons returned to work on January 11, 2016, and was assigned to the third floor with use of a chair at least until January 12, 2016, when the chair was eventually removed. (Id. at 11-13.) Ammons testified that she was also presented with a schedule requiring her to do "triple duty" in the girls' locker room: making sure the locker room was empty; checking the hall by the locker room; and walking down about 25 stairs, walking around to the other side of the building, and walking back up stairs, on a continuous basis for 50 minutes. (Id. at 13.) From January 15, 2016, through March 6, 2016, Ammons was on approved short-term disability leave. (Id. at 14.) From January 15, 2016, through March 7, 2016, Ammons was also on approved FMLA leave. (Id.) Her job protection status ended on March 18, 2016. (Id.)

In the present lawsuit Ammons alleges that the Board retaliated against her for requesting an ADA accommodation and for exercising her rights under the FMLA. (R. 1, Compl. ¶¶ 39-51.) The Board moves to strike Ammons's jury demand as to these two retaliation claims.

**Analysis**

The Board argues that Ammons's retaliation claims permit only equitable relief and therefore must be decided by the court and not by a jury. (R. 100, Def.'s Mem. at 1.) Ammons responds by opposing a bench trial on "any and all issues." (R. 112, Pl.'s Resp. at 2.) In support of its motion to strike Ammons's jury demand, the Board relies on *Kramer v. Banc of American Securities, LLC*, 355 F.3d 961 (7th Cir. 2004). (See R. 100, Def.'s Mem. at 2.) In *Kramer* the Seventh Circuit held, in a matter of first impression for federal circuit courts, that compensatory and punitive damages are not available remedies for ADA retaliation claims and, therefore, there is no right to a jury trial for such claims. 355 F.3d at 965-66.

In determining available remedies for ADA retaliation claims, the Seventh Circuit engaged in "a meticulous tracing" of applicable statutes. *Id.* The court first looked to the ADA enforcement provision, 42 U.S.C. § 12117, which states that available remedies are provided by the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e-4 through e-9. *Kramer*, 355 F.3d at 964. Section 2000e-5(g)(1) in turn provides that a court "may enjoin" a party or order other equitable relief, including "back pay," but "does not provide for compensatory or punitive damages." *Kramer*, 355 F.3d at 964. The Seventh Circuit next turned to the Civil Rights Act of 1991, 42 U.S.C.

§ 1981a(a)(2), which "expands the remedies available under § 2000e-5(g)(1) in certain circumstances." *Kramer*, 355 F.3d at 964. But the court concluded that, like § 2000e-5(g)(1), the 1991 Act does not permit compensatory or punitive damages to be awarded for ADA retaliation. *Kramer*, 355 F.3d at 965. After determining that the only remedies a plaintiff bringing an ADA retaliation claim may seek are "equitable in nature," the court concluded that there is "no right to a jury where the only remedies sought (or available) are equitable." *Id.* at 966.

Despite this ruling from the Seventh Circuit, Ammons argues that she is entitled to a jury trial on her ADA retaliation claim. (R. 112, Pl.'s Resp. at 2.) She cites other circuit cases affirming compensatory damages in ADA retaliation cases but concedes that "none independently examined whether such damages are available under the [ADA]." (Id.) The cases she cites pre-date *Kramer*, and the Seventh Circuit expressly discounted three of the cited cases because "none examined the legal question of whether such damages were authorized for an ADA retaliation claim." *Kramer*, 355 F.3d at 965. Ammons cites no precedential decision overturning *Kramer*.

Ammons next tries to distinguish *Kramer* by arguing that the ADA claim in that case did not survive a motion for summary judgment, whereas here Ammons's ADA discrimination claim is proceeding to trial. (R. 112, Pl.'s Resp. at 3.) Ammons suggests that the presence of her ADA discrimination claim entitles her to "more than equitable relief" and somehow renders her ADA retaliation claim eligible for a jury trial. (Id. at 3-4.) But Ammons cites no supporting authority and the *Kramer*

decision is unequivocal—an ADA retaliation claimant has no right to a jury trial. 355 F.3d at 965-66. Accordingly, the court strikes Ammons's jury demand as to her ADA retaliation claim.[2]

The Board next argues that Ammons's jury demand as to her FMLA retaliation claim should be stricken for the same reason as her ADA retaliation claim. (R. 100, Def.'s Mot. at 3.) Ammons agrees that "the Seventh Circuit's position on FMLA damages is the same as its position on ADA damages" but asserts that her "right to a jury trial differs." (R. 112, Pl.'s Resp. at 5.) It is true that the Seventh Circuit generally evaluates FMLA retaliation claims "in the same manner" that it evaluates ADA retaliation claims. *Burnett v. LFW Inc.*, 472 F.3d 471, 481 n.5 (7th Cir. 2006). However, the ADA's and the FMLA's enforcement provisions differ significantly, and the Board cites no case—let alone any precedential authority—denying an FMLA retaliation plaintiff a right to a jury trial where damages are sought in a case such as this. (See R. 1, Compl. ¶ 43.)

While the ADA permits only equitable relief, *Kramer*, 355 F.3d at 965-66, the FMLA allows damages and equitable relief, *Traxler v. Multnomah Cnty.*, 596 F.3d 1007, 1011 (9th Cir. 2010). To be sure, the FMLA enforcement provision allows a claimant to recover "any wages, salary, employment benefits, or other compensation denied or lost" or "any actual monetary losses sustained by the employee," 29 U.S.C. § 2617(a)(1)(A), as well as "equitable relief" such as "employment, reinstatement,

---

[2] In the alternative, Ammons requests that the court use an advisory jury to determine the issue of liability as to her ADA retaliation claim. The court declines to do so because the responsibility lies with this court and the jury's advisory verdict is not evidence.

7

and promotion," *id.* § 2617(a)(1)(B). Like the ADA, punitive damages may not be recovered under the FMLA. *Coleman v. Potomac Electric Power Co.*, 281 F. Supp. 2d 250, 254 (D.D.C. Sept. 9, 2003). Similarly, compensatory damages for non-economic harm such as emotional distress are not available under the FMLA. *See Jackson v. City of Hot Springs*, 751 F.3d 855, 865 (8th Cir. 2014); *Pagán-Colón v. Walgreens of San Patricio, Inc.*, 697 F.3d 1, 16 (1st Cir. 2012) (citing *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 739-40 (2003)). But given that the FMLA expressly provides for legal remedies, 29 U.S.C. § 2617(a)(1)(A), the statute does not preclude Ammons from demanding a jury trial. *Cf. Kramer*, 355 F.3d at 965-66.

The Seventh Circuit seems to also

recognize that an FMLA retaliation plaintiff may demand a trial by jury. As Ammons correctly points out, the Seventh Circuit has proposed a jury instruction for FMLA retaliation claims. *See* Pattern Jury Instruction No. 10.4 (7th Cir. 2017). Furthermore, the Seventh Circuit has discussed FMLA retaliation issues in a way that signals its expectation that those claims would be tried by a jury. *See, e.g.*, *Goelzer v. Sheboygan Cnty., Wisc.*, 604 F.3d 987, 989, 996 (7th Cir. 2010) (finding that the plaintiff's FMLA retaliation claim should proceed to trial given that there was "enough evidence in the record for a jury to find" that defendants acted with a retaliatory motive); *Wink v. Miller Compressing Co.*, 845 F.3d 821, 822-24 (7th Cir. 2017) (holding that the issues of whether the employer retaliated against the employee for taking an FMLA leave and whether the employee was entitled to liquidated damages under the FMLA were ones for the jury to decide); *see also*

8

*Pagán-Colón*, 697 F.3d at 8-9 (finding unpersuasive the defendant's motion for judgment as a matter of law seeking to reverse the jury's finding that the defendant retaliated against the plaintiff in violation of the FMLA).[3]

While the Board argues that a right to a jury trial is not guaranteed in an FMLA retaliation case, none of the cases it cites support the striking of Ammons's jury demand where damages are sought against a non-federal agency. In *Bair v. General Motors Corporation*, 895 F.2d 1094, 1096-97 (6th Cir. 1990), for example, the Sixth Circuit found that the appellant was not entitled to a jury as to his ERISA claim because the dispute was one in equity concerning "eligibility for benefits under a retirement plan," not one at law. In *Davis v. Henderson*, No. 99-3028, 2000 WL 1828476, at *2 (6th Cir. Dec. 4, 2000), the Sixth Circuit affirmed the grant of the defendant's motion to strike the plaintiff's jury demand in a case alleging Title VII and FMLA violations. In doing so, however, the court relied upon principles of sovereign immunity the federal government enjoys because the suit was brought against the United States Postal Service. *Id.* The court did not decide "whether there is a right to a jury trial under the FMLA against a private defendant," or a

---

[3] In *Traxler*, 596 F.3d at 1011, 1014, the Ninth Circuit addressed whether "front pay [under the FMLA] is an equitable remedy that must be determined by the court," and found that "the equitable award of front pay, including the amount, rests solely with the court, not the jury." In so finding, the court distinguished between the FMLA's "damages" enforcement provision, 29 U.S.C. § 2617(a)(1)(A), and the equitable relief provision, *id.* § 2617(a)(1)(B), and determined that an FMLA plaintiff was not entitled to a jury trial as to an equitable award. *Id.* at 1012. The court noted that its decision "accords with the Fourth, Fifth and the Tenth Circuits" but not with the Sixth Circuit, which has found that "the district court determines the propriety of awarding front pay, but that the jury decides the actual amount of the award." *Id.* at 1011.

non-federal government agency. *Id.* Here Ammons seeks legal remedies against a non-federal agency. (See R. 1, Compl. ¶ 43.) The cases cited by the Board therefore are not applicable here. Accordingly, the court declines to strike Ammons's jury demand as to her FMLA retaliation claim.

## Conclusion

For the foregoing reasons, the motion is granted as to Ammon's ADA retaliation claim but denied as to her FMLA retaliation claim.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**