UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIM AMMONS, | ) |
| | ) No. 16 CV 4884 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| CHICAGO BOARD OF EDUCATION, | ) |
| | ) April 15, 2019 |
| Defendant. | ) |

# MEMORANDUM OPINION and ORDER

Plaintiff Kim Ammons brings this action against Chicago Board of Education ("the Board") for alleged violations of the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"), arising out of her employment as a Security Officer at Curie Metropolitan High School ("Curie"). Before the court are Ammons's motions *in limine* Nos. 7 and 8[1] and the Board's motions *in limine* Nos. 12-27. For the following reasons, Ammons's motions are denied, the Board's Motion No. 15 is granted in part and denied in part, the Board's Motion Nos. 12, 13, 16, 17, 20, and 24-27 are granted, and the Board's Motion Nos. 14, 18, 19, 21-23 are denied.

## Legal Standard

Although not expressly authorized by the Federal Rules of Evidence, the authority to make rulings on motions *in limine* springs from the court's inherent authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *Jenkins*

---

[1] Ammons's Motions in Limine Nos. 1-6 are identical to the Agreed Motions in *Limine* Nos. 1-6. Having already granted these six motions, (R. 141; R. 144), these are denied as moot.

v. *Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). Motions *in limine* are used to "exclude evidence before trial in order to prevent the trial from being interrupted by wrangles over admissibility or the jury from getting a whiff of prejudicial evidence that may in fact be inadmissible." *Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1463 (7th Cir. 1996). But because the primary aim of motions *in limine* is to exclude evidence that is inadmissible on any ground, some rulings are best left until trial so that the context, foundation, and relevance of the contested evidence can be better understood. *Anglin v. Sears, Roebuck & Co.*, 139 F. Supp. 2d 914, 917 (N.D. Ill. 2001) (noting that evidence should be excluded *in limine* only to the extent that clearly inadmissible evidence is eliminated). As such, neither a ruling granting a motion *in limine*, nor a ruling denying one, needs to be the final word on the matter. The court is free to revisit the following rulings during trial. *Luce*, 469 U.S. at 41-42.

## Analysis

**A.    Ammons's Motions *in Limine***

Ammons filed two motions *in limine* on March 1, 2019, Nos. 7 and 8. (R. 131, Pl.'s Mot.) The Board opposes these two motions. (R. 135; R. 136.)

**1.    Motion No. 7.**

Ammons seeks to bar any lay person's opinions concerning effective security in schools, including any employees of the Board. (R. 134, Pl.'s Mot. No. 7.) The Board agrees to Ammons's motion with the exception of allowing testimony from Jadine Chou and Brian Bond, the Board's Chief of Safety and Security and Deputy Chief of

Safety and Security, respectively. (R. 135, Def.'s Resp. at 1.) Ammons argues that "there has been no evidence submitted during the course of this litigation to demonstrate that the two individuals . . . [are] more qualified to testify about effective security in school than [she is] with her twenty plus years as a security officer in the schools." (R. 134, Pl.'s Mot. No. 7 at 1.)

The Board asserts that it disclosed both Chou and Bond in its Rule 26(a)(1) initial disclosures as individuals who would have knowledge about the essential functions of the school security officer position held by Ammons. (R. 135, Def.'s Resp. at 2.) The Board adds that in processing Ammons's ADA request, its Equal Opportunity Commission Office ("EOCO") consulted with both Chou and Bond to discuss what is needed to adequately fulfill the essential functions of Ammons's role. (Id.) The Board further asserts that Chou and Bond's specific job functions afford them unique personal knowledge of effective safety and security measures at Chicago Public Schools ("CPS") and any testimony from them on the subject would be based on personal knowledge rather than speculation and hearsay. (Id. at 3.) The court agrees with the Board that both Chou and Bond have the sort of experience and expansive knowledge that would be relevant in explaining Ammons's role as a school security officer as well as effective school security across CPS from their perspective. For this reason, Ammons's Motion No. 7 is denied.

## 2. Motion No. 8.

Ammons seeks to bar any lay person's opinions and/or testimony regarding the alleged statistics cited in the Board's Local Rule 56.1 Statement of Facts, ¶¶ 19, 68,

3

and 69 regarding the number of fights at Curie during the 2014-2015 school year and the alleged 2012 District review results and comments. (R. 133, Pl.'s Mot. No. 8.) The Board responds that Ammons cannot bar its witnesses from testifying to information within their personal knowledge obtained in the course of performing their work duties. (R. 136, Def.'s Resp. at 2.) The court finds that the evidence Ammons seeks to exclude is relevant to explaining why the Board changed its policy regarding the essential functions of the school security officer role and there is no indication that this relevance is outweighed by concerns of unfair prejudice. Accordingly, Ammons's Motion No. 8 is denied. However, the Board is responsible for laying the proper foundation to show the relevance of the statistics.

**B.    The Board's Motions *in Limine***

The Board filed 16 motions *in limine* on March 1, 2019, Motion Nos. 12-27. (R. 113-130.) In her response, Ammons opposes Motion Nos. 14-24 and 27. (R. 137.)

**1.    Motion No. 14.**

The Board seeks to bar discussion, evidence, argument, or testimony relating to certain claims or charges brought under Title VII of the Civil Rights Act of 1964, ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the ADA, and the FMLA, including any associated Equal Employment Opportunity Commission ("EEOC") and Illinois Department of Human Rights ("IDHR") charges. (R. 117, Def.'s Mot. No. 14.)[2] More specifically, the Board alleges that because the only issue before

---

[2] Ammons's Title VII and ADEA claims are in essence an ADA retaliation claim. The remaining claims in this case are: (1) failure to accommodate in violation of the ADA;

4

the jury in this case is Ammons's ADA failure to accommodate claim, as argued in the Board's motion to strike Ammons's jury demand as to her retaliation claims, (R. 100), the court should not permit any discussions of these unrelated claims, (R. 117, Def.'s Mot. No. 14 at 2). Ammons responds that the Board argues from the position that its motion to strike will be granted, and all retaliation claims will be for a bench trial only. (R. 137, Pl.'s Resp. at 2.) She asks the court to allow all claims to be introduced to the jury to prove a key element that she engaged in protected activities. (Id.)

On March 20, 2019, the court granted in part and denied in part the Board's motion, striking Ammons's jury demand as to her ADA retaliation claim, but not her jury demand as to her FMLA retaliation claim. (R. 139, Mem. Op. at 10.) However, to avoid having to conduct two separate trials, Ammons is permitted to offer all evidence as to all claims, and the court will provide appropriate limiting instructions to the jury. Accordingly, the Board's Motion No. 14 is denied.

**2. Motion No. 15.**

The Board moves to bar any discussion, evidence, argument, or testimony concerning any grievances, including the introduction of grievances filed by Ammons and/or her union pursuant to any collective bargaining agreement ("CBA"), and any communications between Ammons and her union representative. (R. 118, Def.'s Mot. No. 15.) More specifically, Curie's Principal, Allison Tingwall, issued Ammons a

---

(2) reprisal discrimination for having exercised her rights under the ADA; and
(3) reprisal discrimination for having exercised her rights under the FMLA.

5

Notice of Pre-Disciplinary Hearing following an allegation that Ammons abandoned her assigned shift without following proper protocol. (Id. at 2; R. 77 at 10.) Ammons's union filed a grievance on her behalf alleging that the Board violated the CBA when Tingwall directed Ammons to attend a pre-disciplinary hearing on Veterans' Day, a work holiday. (R. 118, Def.'s Mot. No. 15. at 2; R. 77 at 10-11.) The Board seeks to bar evidence relating to this grievance, or any other grievance, arguing that it is not relevant to this case. (R. 118, Def.'s Mot. No. 15. at 2.)

Ammons did not respond to the Board's motion. Therefore, any objection to this motion is waived. *See Graves v. Theil*, No. 01 CV 7714, 2002 WL 31455973, at *1 (N.D. Ill. Oct. 31, 2002) ("When a party does not respond to a motion, the issue is treated as conceded unless there is good reason not to do so."). Instead, Ammons asserts that "Mr. Reeves"[3] would be able to testify to his attempts to work with the Board to help her secure reasonable accommodations, to conversations he engaged in with both her and the Board, and to his submission of proposed break changes to the Board. (R. 137, Pl.'s Resp. at 1-2.) Because Ammons waived any objection to the Board's motion to exclude the mention of any grievances, the Board's Motion No. 15 is granted to the extent that Ammons is barred from introducing any evidence or testimony concerning any grievances the union may have filed on her behalf.

---

[3] Ammons identified Tremaine Reeves as her union representative in her interrogatory responses. (R. 120-2 at 6.)

6

### 3. Motion No. 16.

The Board seeks to strike undisclosed witnesses from Ammons's witness list and to bar Ammons from offering evidence at trial or making arguments to the jury related to them. (R. 119, Def.'s Mot. No. 16.) In particular, the Board asserts that Ammons failed to disclose David Reyes, Ceasar Perez, Mike Oliver, "Mohammad," and Trumaine Reeves in her Rule 26(a)(1) initial disclosures. (Id. at 1.) The Board further argues that Ammons improperly disclosed Shoshanna Smith in her Rule 26(a)(1) initial disclosures. (Id.) Ammons argues that she properly disclosed Smith and Reeves "in her Rule 26(a)(1) initial disclosures and interrogatories." (R. 137, Pl.'s Resp. at 3.) As to Reyes and Perez, Ammons asserts that she named them during her August 29, 2017 deposition. (Id.) She further argues that the Board had ample time to review the records to determine if it wanted to depose each of these witnesses. (Id.)

Federal Rule of Civil Procedure 37(c)(1) enforces the requirements of Rule 26(a) and 26(e)(2) and provides in pertinent part that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), is not, unless such failure is harmless, permitted to use as evidence at trial . . . any witness . . . not so disclosed." Ultimately, the effect of Rules 26(e) and 37 is to exclude undisclosed evidence unless the information is made known to the other side in the context of the case itself. *See Se-Kure Controls, Inc., v. Vanguard Prod. Grp.*, No. 02 CV 3767, 2007 WL 781253, at *6 (N.D. Ill. March 7, 2007).

7

Notably, Ammons makes no mention of "Mohammad" in her response to the Board's motion and therefore has waived any objection regarding the presentation of this witness's testimony. *See Graves*, 2002 WL 31455973, at *1. The court finds that while Ammons had an obligation to seasonably supplement her Rule 26(a)(1) disclosures, such supplements are required only in certain circumstances, such as when the additional information "has not otherwise been made known to the other parties during the discovery process . . . ." *See* Fed. R. Civ. P. 26(e)(1)(A); *David v. Caterpillar, Inc.*, 324 F.3d 851, 856 (7th Cir. 2003). In this case, the remaining four witnesses were identified in the course of discovery. Ammons identified Smith, Reeves, and Reyes in her interrogatory responses as individuals who either "possess knowledge relating to any fact defense or material issues involved in this case," or "witnessed any alleged failure to accommodate and/or retaliation." (R. 120-2, Ex. B. at 2, 4, 6.) During her deposition Ammons revealed that Perez was promoted over her even though she was more qualified, which formed the basis of her 2014 IDHR claim. (R. 58-1 at 244; R. 58-35.) Ammons also described an incident in which Perez, while acting as her supervisor, called her to Principal Tingwall's office after she asked him for a break in accordance with her EOCO accommodation. (R. 58-1 at 154-55.) During that meeting, Tingwall allegedly threatened to fire Ammons. (Id. at 155.) *See Cox v. Prime Fin. Mortg. Corp.*, No. 05 CV 4814, 2006 WL 1049948, at *2 (N.D. Ill. April 20, 2006) (explaining that a party has "no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is

8

identified during the taking of a deposition"); *Weiland v. Linear Constr., Ltd.*, No. 00 CV 6172, 2002 WL 31307622, at *2 (N.D. Ill. Oct. 15, 2002) (holding that the Rule 26(e) duty to supplement initial disclosures was satisfied when the other party learned the identities of witnesses during another witness's deposition). Moreover, the court finds that Smith was properly disclosed in Ammons's Rule 26(a)(1) initial disclosures, and failing to identify Smith's current address was harmless. Accordingly, the Board's Motion No. 16 is granted only as to the witness identified as "Mohammad."

### 4. Motion No. 17.

The Board seeks to strike undisclosed expert witnesses Drs. Elizabeth Klor Glass and Gary Ogurkiewicz and to bar Ammons from offering evidence at trial or making arguments to the jury related to those witnesses. (R. 120, Def.'s Mot. No. 17.) Ammons has no objection to excluding the doctors from testifying as expert witnesses. (R. 137, Pl.'s Resp. at 4.) Instead, she contends that they will serve as fact witnesses, and that she disclosed them in her interrogatory responses. (Id.)

If a witness is to give testimony based on scientific, technical, or otherwise specialized knowledge, Rule 26(a)(2) requires a formal disclosure, notwithstanding any prior disclosure of the witness under Rule 26(a)(1) or the fact that the witness is "already known . . . through prior discovery." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 (7th Cir. 2004). "The exclusion of non-disclosed evidence is automatic and mandatory under [Federal] Rule [of Civil Procedure] 37(c)(1) unless non-disclosure was justified or harmless." *Id.* at 758. It is clear that Ammons failed to

9

disclose Drs. Glass and Ogurkiewicz as expert witnesses as required under Rule 26(a)(2). (R. 137, Pl.'s Resp. at 4.) The harm caused by Ammons's failure to properly disclose the treating physicians as expert witnesses is not harmless. However, allowing Ammons to call them as fact witnesses does not cause the same kind of incurable prejudice to the Board. *See, e.g., Johnson v. Target Corp.*, 487 Fed. Appx. 298, 301 (7th Cir. 2012) (district court properly limited treating physician to factual testimony because plaintiff did not disclose treating physician as an expert). Moreover, the Board was not completely in the dark about the possibility of the doctors testifying about Ammons's medical condition as she identified them in her interrogatories as anticipated witnesses. (R. 120-2, Ex. B at 7.) Accordingly, the Board's Motion No. 17 is granted to the extent that the doctors are not allowed to testify about information that goes beyond the individual observations they made during their treatment of Ammons. In other words, they may not provide testimony that would amount to expert opinions as defined under Federal Rule of Evidence 702. The Board's Motion No. 17 is granted only to the extent that Drs. Glass and Ogurkiewicz may not offer expert opinions.

   5.   **Motion No. 18.**

The Board seeks to bar any discussion, evidence, argument, or testimony pertaining to claims or allegations other than Ammons's ADA failure to accommodate claim. (R. 121, Def.'s Mot. No. 18.) Ammons asks the court, pending the court's ruling on the Board's motion to strike, to allow her to present evidence of prior charges of discrimination and complaints that she made to her employer and outside agencies

10

prior to April 29, 2015. (R. 137, Pl.'s Resp. at 4.) Because Ammons is allowed to present all evidence on all claims, she is allowed to present evidence relating to the time period relevant to this case. For this reason, the Board's Motion No. 18 is denied. However, the Board is not barred from raising objections to specific questions as this ruling only applies to its request to exclude prior to trial.

    **6.**    **Motion No. 19.**

The Board seeks to bar any discussion, evidence, argument, or testimony to the jury pertaining to any conversation or written communications with the Board's EOCO, particularly Corinne Leak (also known as Donna Leak), regarding any claim other than her failure to accommodate claim stemming from her request for an accommodation in April 2015. (R. 122, Def.'s Mot. No. 19.) Ammons responds that allowing her to present evidence of protected activity, such as her contact and/or complaints made to the Board's EOCO, is relevant to establish the timing and content of her initial attempts to submit an ADA request and complaint. (R. 137, Pl.'s Resp. at 5.) Because Ammons is allowed to present all relevant evidence supporting all of her claims, the Board's Motion No. 19 is denied.

    **7.**    **Motion No. 20.**

The Board seeks to bar any discussion or evidence related to damages she is not permitted to recover or that are otherwise to be decided by the court rather than the jury. (R. 123, Def.'s Mot. No. 20.) Ammons acknowledges that she is not able to recover punitive damages, but believes the discussion of lost income and time off work

11

is relevant and important for the jury to hear to determine her non-pecuniary damages in this matter. (R. 137, Pl.'s Resp. at 5.)

The ADA incorporates the remedies available to a plaintiff in a Title VII discrimination action, *see* 42 U.S.C. § 12117(a); 42 U.S.C. § 1981a(a)(2), including compensatory damages "for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3). However, equitable remedies such as back pay, reinstatement, and front pay are generally decided by the court. *See Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 499-501 (7th Cir. 2000). The court precludes Ammons from introducing detailed testimony or evidence regarding her lost income and time off work, as this information is not for the jury's consideration when determining compensatory damages in this case. *See Arroyo v. Volvo Grp. N. Am., LLC*, No. 12 CV 6859, 2017 WL 2985649, at *2 (N.D. Ill. July 13, 2017) (holding that "back pay and front pay are excluded from the definition of compensatory damages"). However, Ammons must be granted some latitude to talk about having to miss work and having no income for that time if these things cause her to suffer emotional distress. Accordingly, the Board's Motion No. 20 is granted only to the extent that Ammons is precluded from offering evidence to calculate her lost wages. In the event the court finds in favor of Ammons on her ADA retaliation claim, a separate hearing will be scheduled to receive additional evidence on equitable remedies to be awarded.

8. **Motion No. 21.**

The Board seeks to bar any discussion, evidence, argument, or testimony, including the introduction of any materials or communications between Ammons and Sedgwick CMS ("Sedgwick")[4] regarding any discussions about short-term disability benefits with the Board's Office of Employee Engagement. (R. 124, Def.'s Mot. No. 22.) The Board further asserts that the only relevance Ammons's short-term disability benefits have is with respect to her mitigation and damages. (Id. at 3.) Ammons disagrees and argues that this information should be considered by the jury because it is relevant to whether she was "qualified as it relates to her time off during her short-term leave." (R. 137, Pl.'s Resp. at 6.) The Board's Motion No. 21 is denied. The court prefers to hear how this information is offered and in what context before ruling on its relevance. The Board is directed to raise its objection when appropriate at trial.

9. **Motion No. 22.**

The Board seeks to bar Ammons from introducing unauthenticated photographs taken at unknown dates, times, and locations by unknown individuals and to bar her from offering evidence at trial or making arguments to the jury related to the photographs. (R. 125, Def.'s Mot. No. 22.) Ammons responds that she has informed the Board that Smith took the photographs and can testify as a witness with knowledge pursuant to Federal Rule of Evidence 901(b)(1). (R. 137, Pl.'s Resp.

---

[4] Sedgwick is a third-party vendor that was previously in charge of handling disability benefit requests from Board employees.

13

at 7.) Under Rule 901, authentication is proper if the proponent "produce[s] evidence sufficient to support a finding that the item is what the proponent claims it is," Fed. R. Evid. 901(a), such as the testimony of a witness with knowledge, Fed. R. Evid. 901(b)(1). The Board's Motion No. 22 is denied. The court permits Ammons to lay the proper foundation to offer and admit photographs. The Board may then renew its objection if applicable at trial.

**10. Motion No. 23.**

The Board seeks to bar discussion of, reference to, or evidence pertaining to Ammons's "good character," such as personal and professional accomplishments and her role as a foster parent. (R. 126, Def.'s Mot. at 23 (citing Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.")). Ammons contends that such evidence is essentially her basic background and personal information and goes to an essential element of the case, whether she was qualified for her security officer position. (R. 137, Pl.'s Resp. at 8.) The court finds no reason why Ammons cannot establish her background and qualifications without discussing the "good character" evidence the Board seeks to bar. *See United States v. Greschner*, 647 F.2d 740, 742 (7th Cir. 1981) ("Character evidence, although relevant, generally is not admissible for the purpose of proving that a person acted in conformity with that character."). However, the Board's Motion No. 23 is denied so that Ammons has some latitude to describe her background. The Board is free to

raise an objection at trial if the questions get too close to eliciting "character evidence."

   11.   **Motion No. 24.**

The Board seeks to bar lay witnesses from giving medical opinions. (R. 127, Def.'s Mot. No. 24.) More specifically, the Board seeks to bar Ammons or other laypersons from testifying or making remarks and/or arguments or giving opinions regarding the causation of any alleged medical condition, diagnosis, future prognosis, and future medical expenses related to her medical condition. (Id. at 1.) Ammons does not object to the motion and explains that her treating physicians Drs. Glass and Ogurkiewicz may testify to a diagnosis or condition they observed first-hand and about any medical opinions rendered during her treatment. (R. 137, Pl.'s Resp. at 9.) Because Ammons's treating physicians are testifying as fact witnesses, the doctors are limited to testifying about facts and circumstances surrounding their own treatment of Ammons and are precluded from rendering medical opinions or reviewing material outside of their own medical records. *See Johnson*, 487 Fed. Appx. at 301. For this reason, the Board's Motion No. 24 is granted.

   12.   **Motion No. 27.**

The Board seeks to bar Ammons and any other witness from speculating as to other security guards having a chair and/or sitting down while working. (R. 130, Def.'s Mot. No. 27.) Ammons agrees to exclude speculative testimony regarding other security guards having a chair and/or sitting down while working, but seeks to allow testimony from any witness with first-hand knowledge of this information based on

15

his or her personal observations. (R. 137, Pl.'s Resp. at 10.) Under Rule of Evidence Rule 602(a), "a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Accordingly, the Board's Motion No. 27 is granted.

**13.   Motion Nos. 12, 13, 25, and 26.**

The Board also moves to exclude the following from trial: (1) Motion No. 12 seeks to exclude discussions or evidence relating to damage awards in other cases; (2) Motion No. 13 seeks to bar references or arguments asking the jurors to consider what they would accept to avoid a similar incident and/or "Golden Rule" appeals (citing Fed. R. Evid. 403; *United States v. Roman*, 492 F.3d 803, 806 (7th Cir. 2007) ("[A] 'Golden Rule' appeal in which the jury is asked to put itself in the defendant's position is universally recognized as improper because it encourages the jury to depart from the neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.") (internal citation and quotation marks omitted); (3) Motion No. 25 seeks to bar testimony referencing, inferring, or otherwise offering testimony as to other litigation involving the Board; and (4) Motion No. 26 seeks to bar Ammons and other witnesses from offering speculative testimony or discussion regarding any alleged discrimination faced by them or other Board employees. Ammons does not object to these motions and, therefore, they are granted.

## Conclusion

For the foregoing reasons, Ammons's Motion Nos. 7 and 8 are denied, the Board's Motion No. 15 is granted in part and denied in part, the Board's Motion Nos. 12, 13, 16, 17, 20, and 24-27 are granted, and the Board's Motion Nos. 14, 18, 19, 21-23 are denied.

**ENTER:**

**Young B. Kim
United States Magistrate Judge**